UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joseph Bodessa Richardson,

    Plaintiff,

    v.                                                                      Civil Action No. 2:11-CV-15

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 5, 7)

    Claimant Joseph Bodessa Richardson brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits.  Pending before the Court are Richardson's Motion seeking an order reversing the Commissioner's decision and remanding for further proceedings (Doc. 5), and the Commissioner's Motion seeking an order affirming the same (Doc. 7).

    For the reasons set forth below, Richardson's motion to remand (Doc. 5) is DENIED and the Commissioner's motion to affirm (Doc. 7) is GRANTED.

## Background

    Richardson was thirty-four years old on the alleged disability onset date. (Administrative Record ("AR") 142.)  He completed one year of college and lives with

his wife and two sons. (AR 7, 165.) Richardson applied for disability insurance benefits and supplemental security income based upon diabetes and back pain. (AR 158.)

Richardson worked as a corrections officer, drug and alcohol counselor, and retail store manager. (AR 167.) He has not worked since December 2008, when he alleges he became unable to work due to pain. (AR 61.) In a 2008 Disability Report, Richardson reported that pain prevented him from sitting, lifting, and concentrating. (AR 158.) He further reported problems sleeping and leg pain resulting in instability. (*Id.*) Richardson reported taking the following medications: Aspirin, Cozaar, Lyrica, Metaprolol, OxyCodone, and OxyContin. (AR 164.)

In Richardson's 2009 Function Report, he reported that his daily activities include personal care, eating, relaxing, and making lunch for his children. (AR 182-83.) He further reported that he requires assistance from his wife in bathing and dressing. (AR 183.) Richardson also reported being able to prepare simple meals, fold laundry, shop for groceries in stores, and drive short distances. (AR 184-87.) He reported that he engages in no social activities as a result of his pain. (AR 185-87.) Although Richardson reported in his first Function Report that he can walk for only twenty-five yards before needing to stop and rest and that he requires a cane (AR 187-88), in a subsequent Function Report, he reported that he can "take [the] dog out for [a] walk" (AR 209). Richardson wrote that he is able to follow written and spoken directions. (AR 187, 213.) He reportedly gets along well with authority figures, handles stress well, and handles changes in routine "O.K." (AR 188, 214.)

In Richardson's 2009 Pain Report, he stated that he suffers from low back pain continuously and that he is unable to do any chores around the house as a result. (AR 191.) He takes OxyContin twice daily, which he reported sometimes relieves the pain. (AR 192.) He further reported constant leg pain, made worse by standing and walking, and pain arising from his diabetes. (AR 193-97.)

On June 8, 2009, Richardson applied for a period of disability and disability insurance benefits, alleging that his back pain and diabetes rendered him unable to work as of December 1, 2008. (AR 36.) His applications were denied initially and upon reconsideration. (*Id.*) Richardson timely requested an administrative hearing, which occurred on August 25, 2010 before Administrative Law Judge ("ALJ") James D'Alessandro. (AR 49-64.) Richardson testified at the hearing and was represented by counsel. (AR 36.)

On September 15, 2010, the ALJ found that Richardson was not disabled within the meaning of the Social Security Act and was therefore not entitled to benefits. (AR 36-43.) The Decision Review Board ("DRB") selected the ALJ's decision for review, but failed to complete its review within the time allotted, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1.) Having exhausted his administrative remedies, Richardson timely filed the instant action on January 14, 2011. (Doc. 1.)

## ALJ Determination

### I.     Five-Step Sequential Evaluation Process

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth and final step requires the ALJ to determine whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)

(clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this five-step analysis, ALJ D'Alessandro first determined that Richardson had not engaged in substantial gainful activity since December 1, 2008. (AR 38.) At step two, the ALJ found that Richardson had the following severe impairments: "mild bilateral neural foraminal narrowing at L5-S1 and facet arthropathy, status post L5-S1 laminectomy in 2002." (*Id.*) At step three, the ALJ found that Richardson did not have an impairment or combination of impairments that met or medically equaled any impairment contained in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 38-41.) Next, the ALJ determined that Richardson had the RFC to perform light work[1] except that he:

> can lift 20 pounds occasionally and 10 pounds frequently. The claimant can walk or stand for at least two hours and sit for 6 hours during an 8-hour workday (Exhibit 9F, p. 2). He can frequently climb ramps and stairs, balance, kneel, and crouch, but never climb ladders or scaffolds. He can occasionally stoop and crawl.

(AR 40.) The ALJ explained that, although Richardson's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not

---

[1] Pursuant to 20 C.F.R. § 404.1567(b), "[l]ight work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The regulation further explains as follows: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

credible to the extent they are inconsistent with the . . . [RFC] assessment." (AR 41.) In support of this credibility determination, the ALJ referenced the objective medical evidence, the subjective factors including Richardson's reported activities, and the opinion evidence. (AR 41-43.)

At step four, the ALJ determined that Richardson was capable of performing his past relevant work as a store manager. (AR 42.) In the alternative, at step five, the ALJ determined based on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), that considering Richardson's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Richardson could perform. (AR 43.) As a result, the ALJ concluded that Richardson had not been under a disability, as defined in the Social Security Act, from December 1, 2008, the alleged onset date, through the date of the decision. (AR 43.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d

7

Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Richardson argues that the ALJ erred by: (1) rejecting the opinions of Timothy Tanner, M.D., Richardson's treating physician; and (2) finding that his subjective complaints of pain were not credible. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and complies with applicable legal standards.

### I. The ALJ's Decision to Give Minimal Weight to Dr. Tanner's Medical Source Statement Is Supported by Substantial Evidence.

Richardson first argues that the ALJ erred by rejecting the opinions of Dr. Tanner. Specifically, he contends that the ALJ should have credited Dr. Tanner's Medical Source Statement of Ability to Do Work-Related Activities, which opined that Richardson cannot perform even sedentary work. (AR 497-502.)

The "treating physician rule" provides that the ALJ must give a treating physician's opinion as to the claimant's disability "controlling weight," so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996). Conversely, a treating physician's opinion is not controlling where it is contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Where conflicts arise in the form of

8

contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When a treating physician's opinion is not given controlling weight, the opinion is still entitled to *some* weight, given that such physician "[is] likely to be the medical professional[ ] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

Under the Commissioner's regulations, the ALJ must consider the following factors when assigning weight to the opinion of a treating source: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the treating physician presents relevant evidence to support an opinion, particularly medical signs and laboratory findings; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist in the area relating to her opinion; and (6) other factors which tend to support or contradict the opinion." *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); 20 C.F.R. § 404.1527(d)(2)-(6)); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (holding that, in deciding what weight to accord to medical opinions, the ALJ may consider a variety of factors, including "[t]he duration of a patient-physician relationship,

the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof").

The treating physician rule does not require the ALJ to give controlling weight to Dr. Tanner's opinions because Dr. Tanner identified no particular medical or clinical findings in support of his opinions, other than to state that Richardson's pain is "provoked by use of arms" and that he has "loss of feeling" in his feet. (AR 499.) Moreover, the Court agrees with the ALJ's finding that Dr. Tanner's opinions with respect to Richardson's functional limitations "are not consistent with the evidence on record and with the claimant's reported activities of daily living." (AR 42.) For example, Dr. Tanner opined that Richardson could sit for a total of twenty minutes, stand for a total of ten to fifteen minutes, and walk for a total of five minutes during an eight-hour work day. (AR 498.) By contrast, Richardson reported that his ability to stand, walk, and sit "depends on pain." (AR 213.)

According to Dr. Tanner, Richardson needed a cane to walk and could walk for only fifteen feet without a cane (AR 498), whereas Richardson reported that he can walk 25-50 yards before needing to rest (AR 213). Dr. Tanner's statement further provided that Richardson could only occasionally reach, handle, and finger things with his hands. (AR 499.) By contrast, Richardson did not state in his Function Report that his impairments limited his ability to use his hands at all. (AR 213.) With respect to Richardson's activities, Dr. Tanner stated that Richardson is unable to perform activities

10

such as shopping. (AR 502.) Richardson, however, reported that he can shop for groceries. (AR 185.)

Richardson's assertions that the ALJ cannot choose to credit the opinions of a non-treating physician over those of Dr. Tanner is without merit. A state agency physician's opinion may constitute substantial evidence in support of the ALJ's decision. *Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010) (finding no error in ALJ's reliance upon state agency consultant's opinion); *Babcock v. Barnhart*, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." (quotation omitted)). Accordingly, the ALJ did not err in crediting state agency consultant Dr. Ann Fingar's opinions that Richardson could walk or stand for two hours and sit for six hours in an eight-hour work day and that he could lift twenty pounds occasionally and ten pounds frequently. (AR 449.)

Further, contrary to Richardson's argument, the ALJ did not mischaracterize Richardson's reported activities of daily living. The ALJ found that Richardson "reported that he was able to make simple meals, walk his dog, care for his children, and . . . . help his wife with some housework." (AR 41.) The ALJ's statement is an accurate representation of statements made by Richardson in his Function Report. Specifically, Richardson wrote that he can "prepare simple sandwiches." (AR 210.) And in response to the question "what do you do for [your pets]?," Richardson wrote, "[t]ake

11

[the] dog out for [a] walk." (AR 209.) Richardson also wrote that he can "make lunch for [his sons]" (AR 183) and "fold laundry" (AR 184).

## II. The ALJ's Determination That Richardson's Complaints of Pain Were Not Credible Is Supported by Substantial Evidence.

Richardson next argues that the ALJ erred in his credibility determination. Specifically, Richardson contends that the ALJ failed to consider the entire record. He points to evidence that he contends is inconsistent with the evidence cited by the ALJ in support of his conclusion that Richardson was not credible.

SSR 96-7p sets forth the evidence that the ALJ must consider in assessing the credibility of a claimant's statements about his or her symptoms. SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). This ruling states:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

*Id.* The ruling further provides that the ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at *2.

Additionally, when determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account. 20 C.F.R. § 416.929; *see*

12

*McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 704-05 (2d Cir. 1980). But the ALJ is not required to accept the claimant's subjective complaints without question; in fact, the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin*, 612 F.2d at 704).

Richardson references specific evidence in the record which he claims documents occasions on which he reported significant pain to his treating physicians. (AR 269, 275, 279, 282, 290, 308, 397-98, 401, 404, 465.) Many of these records, however, do not provide clinical findings or objective observations consistent with his complaints. For example, Richardson argues that the ALJ failed to consider Dr. Tanner's January 8, 2009 note which states "[S]ince his last visit, pain has changed in quality. Now experiences episodically sharp shooting pains that radiate down right leg with sciatic distribution." (AR 308.) Objective clinical signs recorded during the same visit, however, provided that:

> Examination of the back reveals no obvious deformity, edema, or ecchymosis. With palpation pt is quite point tender directly overlying lowest most lumbar to sacral spinal regions. Lesser into paravertebral musculature. No obvious spasm. . . . Appears to be neurovascularly intact to lower extremities grossly. Straight leg raise negative.

(*Id.*)  A March 2, 2009 MRI revealed "no evidence of disc herniation, . . . [m]ild bilateral neural foraminal narrowing at L4-5," "[s]light narrowing of the spinal canal on the lateral recess at L5," and "[f]acet hypertrophy at L4-5."  (AR 397.)  Melynda Wallace, M.D. reviewed the March MRI with Richardson on April 21, 2009 and noted on that day that Richardson's heel-toe walking was intact and his gait was "[i]intact, mildly antalgic."  (AR 397-98.)  Dr. Wallace further noted no Hoffmann's sign.[2]  (AR 398.)  Although Richardson reported increased pain levels to Dr. Tanner on May 7, 2009, a bone scan yielded normal results.  (AR 282.)

In addition, Richardson did not always report disabling levels of pain to his treating physicians.  On February 4, 2009, Richardson sought treatment for a cough with nasal congestion and reportedly had on that occasion "[n]o significant musculoskeletal aches or pains."  (AR 304.)  On May 14, 2009, Richardson reported to Dr. Tanner that his medications were providing him with "moderate relief."  (AR 279.)  On June 4, 2009, Dr. Tanner's notes reflected that Richardson's symptoms were apparently "stable" as a result of his prescription regimen.  (AR 275.)  On July 2, 2009, Richardson was reportedly "doing fairly well."  (AR 269.)  In any event, "disability requires more than mere inability to work without pain.  To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

---

[2] "Hoffman's sign is present if tapping the nail on the third or fourth finger elicits involuntary flexion of the distal phalanx of the thumb and index finger," which indicates spinal cord compression. *Dale v. Astrue*, No. 4:10-CV-632 (CEJ), 2011 WL 2621539, at *3 n.3 (E.D. Mo. July 5, 2011) (citing THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 325 (18th ed. 2006)).

Richardson correctly notes that the ALJ failed to acknowledge that he did report some numbness to his providers on specific occasions. (*See, e.g.*, AR 446.) In addition, treatment notes from Dr. Wallace on October 9, 2009 stated that Richardson had a "clearly antalgic gait" (AR 447), and on December 23, 2009, he was similarly noted to have a "severely antalgic gait" (AR 465). These records alone, however, do not establish that the ALJ's credibility determination was erroneous. When a reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998). The ALJ noted and discussed many of the records described above. (AR 41-42.) Thus, the Court finds that the ALJ's determination is supported by substantial evidence and that he gave good reasons in support of his decision that Richardson was not credible.

Richardson's claim that the ALJ failed to consider all of his activities of daily living is also without merit. As noted above, the ALJ considered Richardson's reported daily activities as set forth by Richardson in his Function Reports and did not unfairly characterize Richardson's statements. *Cf. Genier v. Astrue*, 606 F.3d 46, 49-50 (2d Cir. 2010) (reversing and remanding where the evidence showed that the ALJ's credibility determination "was based on so serious a misunderstanding of Genier's statements that it cannot be deemed to have complied with the requirement that they be taken into account").

15

While Richardson points to other evidence in the record tending to support his assertions, the ALJ need not give identical weight to all the evidence regarding a claimant's subjective complaints of pain. *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). Rather, the ALJ must ultimately resolve evidentiary conflicts and appraise the credibility of witnesses, including the claimant, *see Carroll v. Comm'r of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); and the Court must sustain the ALJ's decision as to credibility if it is supported by substantial evidence, even if there is substantial evidence to support the claimant's position, *see Schauer v. Schweiker*, 675 F.2d 55, 57-60 (2d Cir. 1982). Here, there is substantial evidence supporting the ALJ's determination that Richardson's subjective complaints were not entirely credible. The ALJ applied the correct legal standard in assessing Richardson's credibility, and, given the contradictory evidence, the ALJ was justified in refusing to accept his statements regarding the intensity, persistence, and limiting effects of his impairments.

## Conclusion

For the reasons stated above, Richardson's motion for an order reversing the decision and remanding for further proceedings (Doc. 5) is DENIED, and the Commissioner's motion for an order affirming such decision (Doc. 7) is GRANTED.

Dated at Burlington, in the District of Vermont, this 11th day of August, 2011.

                                       */s/ John M. Conroy*
                                       John M. Conroy
                                       United States Magistrate Judge